COOK v. SOUTHERN RAILWAY CO.

(Filed May 28, 1901.)

1. CARRIERS—*Negligence—Personal Injuries—Master and Servant
—Trespassers.*

A railroad company is responsible for an injury caused by the wrongful act of its employee, while acting in the general scope of his employment, whether such act is wilful, wanton and malicious, or merely negligent.

2. CARRIERS—*Negligence—Personal Injuries—Master and Servant
—Trespassers.*

A carrier owes ordinary care to one stealing a ride on its train.

3. EVIDENCE—*Conflicting—Questions for Jury—Trial.*

Where there is a conflict of evidence as to whether a person was injured by jumping from the train, the question should be submitted to the jury.

ACTION by J. W. Cook against the Southern Railway Company, heard by Judge *Thos. J. Shaw* and a jury, at April Term, 1900, of the Superior Court of BURKE County. From a judgment for the plaintiff, the defendant appealed.

*Avery & Avery,* and *Avery & Ervin,* for the plaintiff.
*Geo. F. Bason,* and *A. B. Andrews, Jr.,* for the defendant.

CLARK, J.    This case is "on all fours" with *Pierce v. R. Co.,* 124 N. C., 63.    It was there humanely held that a "trespasser's wrongful act in getting on a car does not justify making him get off in a manner calculated to kill or cripple him."    Also, that "a railroad company is responsible for injury caused by the wrongful act of its employee, while acting in the general scope of his employment, whether such

act is wilful, wanton and malicious, or merely negligent."
That case cites numerous authorities (pages 93 and 94), for
instance, where the carrier was held liable for a servant
"employed to sweep up the car" kicking a boy off a moving
train, the boy falling under the train and being killed; *R. Co.
v. Hack,* 66 Ill., 238; or a brakeman doing the same, *R. R.
v. Kelly,* 36 Kan., 655; and similar cases. The principle
underlying those cases is stated to be "the proximate cause of
injury is not the trespasser's wrongfully getting on the cars,
but the tortious manner in which the servant makes him get
off." In that case (*Pierce v. R. Co., supra*) the carrier was
held liable because a brakeman, either by throwing a lump of
coal which frightened or struck a boy who was stealing a
ride on the train, or by merely ordering the boy off, made him
get off a moving train so that he was killed. In the present
case the plaintiff was likewise stealing a ride. Instead of
stopping the train to make him get off, or waiting until the
train got to a station, it was in evidence that while the train
was going four or five miles an hour the flagman, a white
man, and a colored brakeman, got off the train, cursed the
plaintiff and told him to get off, the brakeman threw a rock
and hit the rod under the car on which the plaintiff was
resting, and the flagman said "give it to him." In conse-
quence of this assault and the threats accompanying it the
plaintiff was forced to get off while the car was moving, and
in so doing caught his foot and was badly hurt.

The defendant offered evidence denying that the plaintiff
was forced to get off by its servants. The testimony was also
conflicting whether the plaintiff was injured or not. These
matters were therefore properly submtted to the jury.

As to the second exception, the Court told the jury that as
the plaintiff was stealing a ride the defendant owed to him
only ordinary care, which it defined to be "such care as a per-
son of ordinary prudence and skill would usually exercise

under the same or similar circumstances." That this small degree of care must be used towards a trespasser has been often held. *Pickett v. R. Co.,* 117 N. C., 616; *Baker v. R. Co.,* 118 N. C., 1015; *Ellerbee v. R. Co.,* 118 N. C., 1024. Such modicum of care was not exercised towards the plaintiff if, as the jury found, he was forced to get out from under a car running four or five miles an hour by the defendant's servants throwing rocks at him and cursing him. It can make no difference to him whether the chief in charge of the assault wore the epaulet of a conductor, the sergeant's chevron of a flagman, or the corporal's stripes of a brakeman, or, indeed, if the stone-thrower had been a lesser servant, a private, perhaps, in the carrier heirarchy

It was within the scope of the authority of a flagman or brakeman to eject or expel the plaintiff. Indeed, the flagman was asked by defendant's counsel what he did with tramps when he found them on the train. To which he replied that it "depended on where he found them." But independent of this, the flagman and brakeman were there in the service of the company, and if, as plaintiff testified, by assault and threats they made him get off a car moving four or five miles an hour, and the conductor did not restrain them, the company is liable for this wrongful act of its servant, if such wrongful act caused injury to the plaintiff. The conductor, by his standing orders and supervision of those under him, should have prevented the assault by them upon the plaintiff, even upon a trespasser.

The plaintiff could have been legally ejected by any employee, if done with no more force than was necessary and in a proper manner. It is the manner in which the plaintiff was ejected, and not the rank of the servant ejecting him, of which he has cause to complain and which makes the master liable. If the conductor had thrown the rocks at the plaintiff, it would in the same sense have been outside the scope of his

employment, for the conductor had no more authority to assault the plaintiff than the flagman or brakeman had.

The defendant has misconceived the meaning of *Pierce v. Railroad, supra,* and cases therein cited. If any servant "acting in the general scope of his employment wrongfully assaulted the plaintiff, and such wrongful assault caused the injury, the defendant is liable," that is to say, if the conductor *while acting as conductor,* or the flagman or brakeman while *on duty as flagman or brakeman,* wrongfully assaults one on the train, even though such person be a trespasser and such wrongful assault is the proximate cause of the injury, the carrier is liable. "Acting within the general scope of his employment" means while on duty, and not that the servant was authorized to do such acts. Take the case of *Strother v. Railroad,* 123 N. C., 197, where the carrier was held liable for an insulting proposition by a conductor, but it was not in the general scope of his employment to make such propositions. This is the reasoning and the reading of the authorities. If this were not so, the carrier would never be liable, for it can not be within the authority of any officer or employee to wrongfully assault any one.

The other exceptions do not require discussion.

Affirmed.