S. A. WALTERS v. DURHAM LUMBER COMPANY.

(Filed 19 November, 1913.)

1. Master and Servant—Fellow-servants—Selection of Employees—Negligence.

An employer, except in case of railroads, is not responsible for injuries to an employee attributable solely to the negligence of a fellow-servant, but he is required to exercise reasonable care in selecting employees who are competent and fitted for the work in which they are engaged; and if there is negligence in this respect, and it is shown that such negligence is the proximate cause of the injury to a fellow-servant, he may be held liable.

2. Same—Presumptions—Burden of Proof—Knowledge of Master.

Where damages are sought in an action against the employer for his negligence in selecting an employee, alleged as the proximate cause of a personal injury inflicted on his coemployee, it is the presumption that the employer performed his duty in the selection, and before responsibility can be fixed on him, it must

be established by the greater weight of the evidence that the employee has been injured by reason of the carelessness or negligence due to the incompetency of the fellow-servant, who had been employed or retained after knowledge of the fact of incompetency by the employer, either actual or constructive.

3. **Master and Servant—Fellow-servants—Duty of Master—Incompetency of Servant—Definition.**

The incompetency of an employee which will render the employer responsible in an action for damages for a personal injury negligently inflicted by him on a fellow-servant is not confined to a lack of physical capacity or natural mental gifts, or of technical training when such training is required, but it extends as a general rule to any kind of unfitness which renders the employment or retention of the servant dangerous to his fellow-servant, including habits of carelessness or inattention in a kind of work where such habits or methods are not unlikely to result in injury to the fellow-servant.

4. **Master and Servant — Fellow-servant—Negligence—Evidence—Specific Acts—General Character—Knowledge of Master.**

Where the master is sued for his negligence in selecting a servant whose negligence is alleged to have proximately caused an injury to a fellow-servant, for which an action for damages has been brought, testimony is ordinarily competent of the general reputation of the servant for incompetency, for habitual carelessness or inattention on his part to duties which require care and attention, to prevent an injury to a fellow-servant, tending to show his unfitness to perform the services required of him; and in so far as it may tend to establish the character of incompetency of the servant and to fix the master with express or implied knowledge thereof, specific negligent acts of the servant may be shown, though incompetent as tending to show his negligence, which is the subject of the present action.

5. **Master and Servant—Fellow-servant—Negligence—Vice Principal—Knowledge—Presumptions.**

Where the incompetency of an employee is known to the vice principal of the master, the latter is fixed with knowledge, and is responsible in damages for an injury proximately caused to a fellow-servant by reason of such incompetency; and the fact that the vice principal had subsequently left his employment does not affect the result.

6. **Master and Servant—Fellow-servant—Negligence—Incapacity—Trials—Evidence—Nonsuit.**

Plaintiff was engaged at the time of his injury at defendant's ripsaw, helping to make pieces for door panels, requiring two per-

sons, "a feeder," who pushes the lumber onto the saw, and a "tailer," who draws the piece away from it, the latter holding the plank down on the saw table in such a manner as to keep it from flying back, impelled by the revolving saw, and injuring the one feeding the machine. While helping to do this work as a feeder, the plaintiff was injured by the piece flying back in the manner described, and in his action for damages introduced evidence tending to show the general reputation of the "tailer," working with him, for inattention and incompetency, and that this was known to the master at the time of his employment, or could have been ascertained by him thereafter had he exercised reasonable care or attention in his capacity of an employer of labor, and that his negligence in this respect was the proximate cause of the injury: *Held*, that a judgment as of nonsuit upon the evidence cannot be sustained.

APPEAL by plaintiff from *Peebles, J.,* at March Term, 1913, of DURHAM.

Civil action to recover damages for physical injuries caused by the alleged negligence of the defendant company in the selection of a fellow-employee.

There was evidence on the part of plaintiff tending to show that, on 9 November, 1911, the plaintiff, an employee of the defendant company, was engaged in operating a ripsaw, making pieces for door panels; that the work is ordinarily done by two persons, one a feeder, who pushes the lumber or material onto the saw, and the other the "tailer," who draws the piece away from the saw; a witness saying: "The tailer takes hold of it and holds the plank down to the table to keep it from flying up until it gets through the saw. He then lays the plank down"; that the work requires careful and continuous attention, and if the tailer raises the material before it is severed or before it is clear of the saw, it is not unlikely to be caught and hurled backward, causing injury to the other operator, the feeder; that on the occasion in question the plaintiff's regular assistant, Roberts, having been called away, one Milton Carden, another employee, was sent to do his work; that Carden had not been engaged in this or other work of like kind, and, soon after he commenced, being inattentive and looking away from his work, he raised the piece of material before it was sawed or before it was clear

of the saw; that same was caught and thrown against the plaintiff with great force, causing serious and very painful injuries.

In endeavoring to develop his case before the court and jury, plaintiff offered to prove that said Milton Carden had the general reputation of being careless and inattentive and unfitted for work of this kind. The evidence was excluded, and plaintiff excepted.

Again, the plaintiff offered evidence tending to show that said Milton Carden was habitually careless and inattentive to his duties, and had been observantly so during the time he was in the employment of defendant, more than a year. Proof excluded, and plaintiff excepted. In this connection, among others, a witness by the name of W. F. Stanly was asked the following question:

"Q. State whether or not Mr. Carden had the habit of looking away from his work and not giving attention to the work that he was engaged in."

The defendant objected to this question. Counsel for plaintiff explained that the purpose of the question submitted to the witness Stanley was to show that Mr. Carden, an employee of the defendant company, who was working with the plaintiff at the time of the injury, was incompetent and was in the habit of neglecting his work, and that this fact was known to the defendant company. The objection was sustained, and the plaintiff excepted.

This witness was also asked if, in his opinion, Carden was competent for the work he was then engaged in, and question was excluded and plaintiff excepted.

Again, a witness by the name of W. E. Young testified that he was foreman of defendant company for some time prior to 1910, having supervision over Carden and with power to employ and discharge labor, etc., but was not now in the company's employment. This witness was asked the question:

"Q. State whether or not as foreman of the defendant you knew the habits and character of Mr. Carden as a workman at the time you and he worked with the defendant company."

To the foregoing question the defendant objected. The objection was sustained, and plaintiff excepted.

Counsel for plaintiff explained the question was asked for the purpose of showing that Mr. Carden was incompetent as a workman and that he was inattentive to his work; that he had a habit of looking away from his work and laughing and talking to others, and that this was before the injury, and that these facts were known to this witness, as foreman of the defendant company's mill. He was not foreman at the time the injury occurred, but Mr. Higby was foreman.

Question was excluded, and plaintiff excepted.

This witness was afterwards recalled and stated, without objection: "Had worked for some time, a year or two, with Mr. Carden at defendant's plant. He had a way of stopping and speaking to any one, and he would catch hold of them when they would come by, and I had to speak to him about it more than once, occasionally. If any one came by, close by, he would turn around and speak to them over a job whenever he was at work." And again: "What I have noticed and described was just a common habit he had. I know his general reputation in this particular at the mill. I was in a position in the mill invested with power to employ and discharge labor."

Cross-examination: "I left the employ of the defendant company in January, 1910; worked with the defendant, the Durham Lumber Company. Mr. Carden was a grown man. He worked there a long time; don't remember how long. Mr. Carden was a man of sense and intelligence enough to know how to take the boards away from that saw if he paid attention to it."

Several witnesses for defendant testified that Carden had sufficient sense and intelligence to do this work, and it was further disclosed, on cross-examination of some of these witnesses, that while in defendant's employment he was "careless and inattentive and was rough and careless in the way he did his work," etc.

On motion, there was judgment of nonsuit. Plaintiff excepted and appealed.

*J. A. Giles and Bryant & Brogden for plaintiff.*
*W. L. Foushee for defendant.*

HOKE, J., after stating the case: It is the very generally accepted principle, unless otherwise provided by statute, as it is in this State in the case of railroads, that an employer of labor is not responsible for injuries to an employee attributable solely to the negligence of a fellow-servant. *Hagins v. R. R.,* 106 N. C., 527. He is held, however, to the exercise of reasonable care in selecting employees who are competent and fitted for the work in which they are engaged, and, if there has been negligence in this respect, and it is shown that such negligence is the proximate cause of injury to an employee, he may be held liable. Shearman and Redfield on Negligence (6 Ed.), sec. 189; Bailey on Master's Liability, p. 46. The presumption is that the employer has properly performed his duty in the respect suggested, and before responsibility can be fixed on him it must be established by the greater weight of the testimony that the employee has been injured by reason of the carelessness or negligence due to the incompetency of a fellow-servant; that the master has been negligent in employing or retaining an incompetent employee after knowledge of the fact, either actual or constructive. Shearman and Redfield (6 Ed.), sec. 190; Bailey on Master's Liability, pp. 48-55; *Big Stone Iron Co. v. Ketnon,* 102 Va., 23. In the citation from Shearman and Redfield, the authors say: "The burden of proving negligence in selecting or continuing an unfit servant is upon the plaintiff. He must prove (1) the specific negligent act on which the action is founded, which may, in some cases, but not generally, be such as to prove incompetency, but never can, of itself, prove notice to the master; (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in 'oversight and supervision,' or by proving general reputation of the servant for incompetency or negligence; and (4) that the injury complained of resulted from the incompetency proved. For evidence of a defect or bad habit is of no effect if the injury complained of was in no way brought about by

that defect or habit. The mere fact of the incompetency of a servant for the work upon which he was employed is not enough to warrant a jury in finding the master guilty of negligence in employing him. But the evidence by which such incompetency is proved may be of such a nature as to raise a fair inference that the master either had notice of the fact or else omitted to make such inquiries as common prudence would have dictated." And, in this connection, it may be well to note that this term, incompetency, is not confined to a lack of physical capacity or natural mental gifts or of technical training when such training is required, but it extends to any kind of unfitness which "renders the employment or retention of the servant dangerous to his fellow-servant," and would include habits of carelessness or inattention in a kind of work where such habits or methods are not unlikely to result in injury. Thompson on Negligence, Vol. IV, sec. 4049.

In making out the proof required to fix the employer with liability on an issue of this character, it is very generally held that testimony of the general reputation of the fellow-servant for incompetency is admissible, and also of habitual carelessness and inattention on his part tending to show that he was unfitted for the work in which he was engaged; and, by the great weight of authority, it is also held that specific acts of negligence or carelessness and inattention on the part of the offending fellow-servant should be received, not to show that there was negligence in the particular case being investigated, but in so far as they may tend to establish the character of incompetency and that the same was known to the master or should have been in the exercise of the duties incumbent upon him as an employer of labor. *Ally v. Pipe Co.,* 159 N. C., pp. 327-330; *Lamb v. Littman,* 132 N. C., 978; *Baulec, Admx., v. N. Y. and Harlem R. R.,* 59 N. Y., 356; *Western Stone Co. v. Whalen,* 157 Ill., 472; *Grisbe v. Mo. Pac. Ry.,* 98 Mo., 330; *Wesley Hilts v. Chicago and G. R. R. Co.,* 55 Mich., 437; *Evansville and Terre Haute R. R. v. Guyton,* 115 Ind., 450; *B. and O. R. R. v. Camp,* 65 Fed.; 962; 1 Wigmore on Evidence, secs. 199-208 and 250; Bailey on Master's Liability, pp. 55, 56, and 57. In the refer-

ence to Bailey, *supra,* it is said: "The presumption is that the master has exercised proper care in the selection of the servant. It is incumbent upon the party charging negligence in this respect to show it by proper evidence. This may be done by showing specific acts of incompetency, and bringing them home to the knowledge of the master or company; or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice. But such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of. So it is proper, when repeated acts of incompetency of a certain character are shown on the part of the servant, to leave it to the jury to determine whether they did come to the knowledge of the master, or would have come to his knowledge if he had exercised ordinary care."

The Courts of Pennsylvania and Massachusetts seem to have rejected the evidence of specific acts of negligence for any purpose, on the ground, chiefly, that such evidence tends to unduly multiply the issues; but, as heretofore stated, we think the weight of authority and the better reason sustain the admissibility of the evidence for the purpose and under the circumstances indicated.

Applying these principles, we are of opinion that the evidence offered by plaintiff tending to show the general reputation of Milton Carden, the fellow-servant, should have been received; that the question as propounded to the witness W. E. Young, as to the habits and character of Carden as a workman while under the witness as foreman of defendant's work, was also relevant to the extent that it tended to fix the character of Carden as an incompetent employee and under circumstances from which knowledge on the part of the master might be reasonably inferred; and if it is established that knowledge of the kind indicated came to this witness in the course and scope of his duties as vice principal of defendant, it would fix the company with notice as a conclusion of law, and the fact that the witness had subsequently left the employment of the company would not affect the result (*Fishblate v. Fidelity Co.,* 140 N. C., 589; *Neal*

v. *Hardware Co.*, 122 N. C., 104; Tiffany on Agency, p. 257; 1 Clark and Skyle on Agency, sec. 474), and, on the evidence admitted, we think the judgment of nonsuit must be set aside.

As the case goes back for a further hearing, we do not consider it desirable to make detailed or specific reference to the inferences permissible on the testimony, but, applying the well established rule that, when there has been a judgment of nonsuit, under the statute the evidence making for validity of plaintiff's claim must be taken as true and interpreted in the light most favorable to him, we are clearly of opinion that the question of defendant's liability should have been referred to the jury on the issues raised by the pleadings and under the principles as heretofore stated.

On the question asked of the witness W. F. Stanley, and excluded, whether, in his opinion, Milton Carden was competent for the work in which he was then engaged, there are decided cases of authority in support of his Honor's ruling. *Troy Fertilizer Co. v. Logan*, 90 Ala., 325; *Moore v. Chicago and Qu. R. R.*, 65 Iowa, 505; Labatt on Master and Servant (2 Ed.), sec. 1597.

We are not prepared to say that the principles sustained by these decisions should apply to all instances nor to any and every class of employees, but, having regard to the character of work and on the facts presented, we hold that the authorities referred to should be allowed as controlling, and that, in the present case, the question was properly excluded.

For the errors indicated, the judgment of nonsuit will be set aside, that the case may be referred to the jury under proper instructions.

Reversed.