GAIL WEST MEDLIN, GUARDIAN AD LITEM FOR PAMELA LYNN MEDLIN v. VANN J. BASS, INDIVIDUALLY AND AS AGENT FOR FRANKLIN COUNTY BOARD OF EDUCATION; LUTHER BALDWIN, INDIVIDUALLY AND AS AGENT FOR FRANKLIN COUNTY BOARD OF EDUCATION; WARREN W. SMITH, FRANKLIN COUNTY BOARD OF EDUCATION; RUSSELL E. ALLEN, INDIVIDUALLY AND AS AGENT FOR FRANKLIN COUNTY BOARD OF EDUCATION; FRANKLIN COUNTY BOARD OF EDUCATION, DEFENDANTS

No. 7A90

(Filed 5 December 1990)

1. **Master and Servant § 33 (NCI3d); Schools § 11 (NCI3d) — school principal — sexual assault on student — insufficient forecast of negligent hiring or retention**

Plaintiffs' forecast of evidence was insufficient to establish a claim against defendant school superintendent and defendant school board for negligent hiring or retention of a school principal who allegedly sexually assaulted the minor plaintiff because the forecast was devoid of evidence that defendants knew or reasonably could have known of the principal's alleged pedophilic tendencies prior to the incident in question where evidence before the court tended to show: the principal's sexual assaults on the minor plaintiff allegedly occurred during the first few days of the 1984-85 school year when he called her to his office to discuss her attendance problems; the principal had previously worked as a teacher and principal in the Rocky Mount school system for ten years and had resigned in 1968 when a student's father alleged that he had sexually assaulted the student; the official explanation for his resignation was "health reasons"; before defendant school board hired him as a teacher in January 1969, an assistant superintendent's

telephone calls to two references who were educators in Rocky Mount did not reveal the previously alleged sexual assaults; subsequent written recommendations by the Rocky Mount educators contained no information indicating that the principal was a pedophile; an assistant superintendent of defendant school board interviewed the Rocky Mount superintendent in the Spring of 1969 about a rumor that the principal was a homosexual, but the superintendent said nothing during the interview about the alleged assault; defendant superintendent called the Rocky Mount superintendent before hiring the alleged assailant as a principal in June 1969; and the principal had performed his official duties in a satisfactory manner for approximately sixteen years.

**Am Jur 2d, Assault and Battery §§ 131, 134; Municipal, County, School, and State Tort Liability §§ 524, 625, 633, 634, 639.**

2. **Master and Servant § 34.1 (NCI3d); Schools § 11 (NCI3d) — principal's sexual assaults on student — school board not liable under respondeat superior**

    A school principal's alleged sexual assaults on a student after he had summoned her to his office to discuss her truancy did not occur within the course and scope of his employment so as to subject defendant board of education to liability under a respondeat superior theory. While the principal was exercising authority conferred upon him by defendant board of education when he summoned the student to his office, he was advancing a completely personal object in proceeding to assault her sexually.

**Am Jur 2d, Assault and Battery §§ 131, 132; Municipal, County, School and State Tort Liability §§ 534, 625, 633, 634, 639.**

    Justice MARTIN dissenting in part.

    Justice FRYE joins in this dissenting opinion.

APPEAL by plaintiff pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 96 N.C. App. 410, 386 S.E.2d 80 (1989), affirming summary judgment for defendants Franklin County Board of Education, Luther Baldwin, Warren W. Smith and Russell E. Allen, entered by *Crawley, J.,* on 26

MEDLIN v. BASS

[327 N.C. 587 (1990)]

April 1988 in Superior Court, FRANKLIN County. Heard in the Supreme Court 4 September 1990.

*J. Wilson Parker and Kirk, Gay, Kirk, Gwynn & Howell, by Andy W. Gay and Katherine M. McCraw, for plaintiff appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by David H. Batten; Davis, Sturges & Tomlinson, by Charles M. Davis, for defendant appellee Franklin County Board of Education.*

*Young, Moore, Henderson & Alvis, by David P. Sousa, Theodore S. Danchi, and Knox Proctor, for defendant appellee Warren W. Smith.*

*J. Wilson Parker for the North Carolina Academy of Trial Lawyers, amicus curiae.*

*William G. Simpson, Jr., for the North Carolina Civil Liberties Legal Foundation, amicus curiae.*

*Charles M. Patterson for the North Carolina Civil Liberties Union Legal Foundation, amicus curiae.*

*Katherine Holliday for the Children's Law Center, amicus curiae.*

WHICHARD, Justice.

Plaintiff, as guardian ad litem for her minor daughter, sought to recover from defendants compensatory and punitive damages allegedly sustained as the result of sexual assaults upon the minor plaintiff by defendant Vann J. Bass, principal of the school which the minor plaintiff attended. She alleged that on one occasion defendant Bass sexually assaulted the minor plaintiff by committing lewd and lascivious acts and taking immoral, improper and indecent liberties, and that on a second occasion defendant Bass sexually assaulted the minor plaintiff by the same acts and additionally by willfully carnally knowing and abusing the minor plaintiff. Plaintiff asserted claims against defendant Bass for assault and battery, false imprisonment, and intentional infliction of mental distress.

In an amended complaint plaintiff joined, as additional defendants, the Franklin County Board of Education (FCB), Warren W. Smith, Superintendent of FCB, Russell E. Allen, Assistant Superintendent of FCB, and Luther Baldwin, Truancy Officer for FCB. She alleged that defendants Smith and Allen were negligent

in hiring and retaining defendant Bass, and that defendant Baldwin inflicted severe emotional distress upon the minor plaintiff by causing issuance of a juvenile petition against her without proper investigation of all relevant facts. She alleged that all individual defendants at all relevant times were acting within the course and scope of their employment with defendant FCB and that their acts or omissions thus should be imputed to defendant FCB.

After consideration of the pleadings, affidavits, and deposition transcripts, including attachments and exhibits, the trial court denied defendant Bass' motion for summary judgment, but allowed motions for summary judgment filed on behalf of defendants Smith, Allen, Baldwin, and FCB. Plaintiff appealed, and the Court of Appeals affirmed. *Medlin v. Bass*, 96 N.C. App. 410, 386 S.E.2d 80 (1989). Judge Phillips dissented as to the summary judgments in favor of defendants FCB and Smith. Plaintiff exercised her right to appeal to this Court. N.C.G.S. § 7A-30(2) (1989).

Because this appeal is before us pursuant to N.C.G.S. § 7A-30(2), review is limited to the issues raised in Judge Phillips' dissent: (1) whether defendant Smith, as FCB Superintendent, negligently investigated defendant Bass before hiring him, and (2) whether defendant Bass' offenses occurred in the course and scope of his employment, thus subjecting FCB to liability under a respondeat superior theory. *Medlin*, 96 N.C. App. at 416-17, 386 S.E.2d at 83-84. *See* N.C.R. App. P. 16(b). We hold that plaintiff did not forecast evidence that defendant Smith was negligent in his investigation of defendant Bass or that defendant Bass was acting within the course and scope of his employment at the time he allegedly attacked the minor plaintiff. We thus affirm the Court of Appeals.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (1990). "[I]ts purpose is to eliminate formal trials where only questions of law are involved." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971).

[1] North Carolina recognizes a claim for negligent employment or retention when the plaintiff proves:

MEDLIN v. BASS

[327 N.C. 587 (1990)]

(1) the specific negligent act on which the action is founded . . . (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) *either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in 'oversight and supervision,'* . . . ; and (4) that the injury complained of resulted from the incompetency proved.

*Walters v. Lumber Co.*, 163 N.C. 536, 541, 80 S.E. 49, 51 (1913) (quoting Shearman & Redfield on Negligence § 190 (6th ed. 1913)) (emphasis added); *see also Pleasants v. Barnes*, 221 N.C. 173, 19 S.E.2d 627 (1942) (plaintiff must show employer's hiring or retention after actual or constructive knowledge of employee's incompetence).

Evidence before the trial court upon defendants' motions for summary judgment showed that before working in the Franklin County Schools, defendant Bass had worked as a teacher and principal in Rocky Mount, North Carolina, for ten years. In June 1968, a Rocky Mount student and the student's father alleged that Bass had assaulted the student sexually. Bass neither confirmed nor denied the incident when Rocky Mount Superintendent Fields asked him about it; instead, he resigned. The official explanation for the resignation was "health reasons"; Rocky Mount school personnel never investigated the incident beyond Fields' inquiry.

Bass moved to Franklin County in the summer of 1968 and did not work until FCB hired him in January 1969. Before FCB hired Bass, Margaret Holmes, FCB Associate Superintendent, telephoned one of his references, Millie Moore, Holmes' college friend and a respected educator. In early February, Holmes sent forms to two of the three references Bass listed on his application. FCB's policy at the time was to contact two of the three references. Holmes' inquiries to Millie Moore, a school supervisor in Rocky Mount, and Ella Moore, a principal there, two of Bass' three listed references, did not reveal the previous alleged sexual assault. Ella Moore commented that she knew of no "habit, [or] physical or mental peculiarities, likely to interfere" with Bass' success and described him as "one of the most promising men in education." Millie Moore wrote that Bass did "an excellent job" and that Rocky Mount "lost a very valuable educator when [the school system] lost Mr. Bass."

Holmes visited and interviewed Rocky Mount Superintendent Fields, Bass' third reference, later that spring after a FCB principal mentioned hearing a rumor that Bass was a homosexual. Bass was still a teacher at this time. According to Holmes' deposition, in that interview she specifically asked Fields about Bass' sexual proclivities. Fields does not recall whether Holmes questioned Bass' sexual proclivities specifically. Fields said nothing about the previous alleged assault during the interview. Before Bass became a FCB principal in June 1969, FCB Superintendent defendant Smith called Fields to ask whether Bass would be a good principal.

Although Holmes, who worked under defendant Smith, the FCB Superintendent, did not receive the written recommendations until after Bass was hired, it is clear that the recommendations contained no information indicating that Bass was a pedophile. It is equally clear that the only rumor relating to Bass' sexual tendencies was investigated and remained unconfirmed. Further, Bass performed his official duties in a satisfactory manner for approximately sixteen years. His alleged sexual assaults on the minor plaintiff occurred during the first few days of the 1984-85 school year, when, according to her forecast of evidence, he called her to his office ostensibly to discuss her attendance problems and then assaulted her.

The foregoing forecast is devoid of evidence that defendants FCB or Smith knew or reasonably could have known of defendant Bass' alleged pedophilic tendencies prior to the incident that is the subject of this lawsuit. It thus fails to establish an essential element of a claim for negligent hiring or retention, *Walters v. Lumber Co.*, 163 N.C. 536, 80 S.E. 49, and summary judgment for defendants on this claim was proper.

[2] Plaintiff also argues that there is a genuine issue of material fact regarding defendant FCB's liability under a respondeat superior theory. An employer will be liable under this theory when the employee's act is "expressly authorized; . . . committed within the scope of [the employee's] employment and in furtherance of his master's business — when the act comes within his implied authority; . . . [or] when ratified by the principal." *Snow v. DeButts*, 212 N.C. 120, 122, 193 S.E. 224, 226 (1937). In *Snow*, this Court found that an employer was not liable when its employee, a general manager, assaulted the plaintiff after the plaintiff expressed his views at a public hearing. It concluded that even though the manager

**MEDLIN v. BASS**

[327 N.C. 587 (1990)]

had broad implied authority, the assault was not within the scope of his authority. Thus, where the employee's action is not expressly authorized or subsequently ratified, an employer is liable only if the act is "committed within the scope of . . . *and* in furtherance of [the employer's] business." *Id.* (emphasis added); *see also Brown v. Burlington Industries, Inc.*, 93 N.C. App. 431, 437, 378 S.E.2d 232, 235, *disc. rev. allowed*, 325 N.C. 270, 384 S.E.2d 513, *cert. granted*, 325 N.C. 704, 387 S.E.2d 55 (1989), *disc. rev. improvidently allowed*, 326 N.C. 356, 388 S.E.2d 769 (1990); *Troxler v. Charter Mandala Center*, 89 N.C. App. 268, 271, 365 S.E.2d 665, 668, *disc. rev. denied*, 322 N.C. 838, 371 S.E.2d 284 (1988) ("To be within the scope of employment, an employee, at the time of the incident, must be acting in furtherance of the principal's business and for the purpose of accomplishing the duties of his employment.").

Where the employee's actions conceivably are within the scope of employment and in furtherance of the employer's business, the question is one for the jury. Thus, when a person assaulted plaintiff while defendant's employees were loading plaintiff's possessions on a truck, whether the attacker was defendant's employee and was acting in the course and scope of the employment was a question for the jury. *Robinson v. McAlhaney*, 214 N.C. 180, 198 S.E. 647 (1938). This Court noted that "proof that [the assailant] was authorized to assist in the removal of the furniture [does not] necessarily require the conclusion that he was about his master's business in committing the assault. This is a question for the jury." *Id.* at 183, 198 S.E. at 650.

Our Court of Appeals has held that when a parking attendant drew a gun on plaintiff after plaintiff refused to pay the posted parking fee, the question of whether the attendant was "about his master's business or whether he stepped aside from his employment to commit a wrong prompted by a spirit of vindictiveness or to gratify his personal animosity or to carry out an independent purpose of his own" was for the jury to determine. *Carawan v. Tate*, 53 N.C. App. 161, 164, 280 S.E.2d 528, 531, *modified*, 304 N.C. 696, 286 S.E.2d 99 (1981). In *Edwards v. Akion*, the plaintiff and a sanitation worker disagreed about the manner in which the worker collected plaintiff's refuse, and the worker knocked plaintiff to the ground, injuring her. There was some evidence that the dispute concerned whether the worker should pick up a certain type of garbage. The Court of Appeals stated that "[w]hen there is a dispute as to what the employee was actually doing at the

time the tort was committed, all doubt must be resolved in favor of liability and the facts must be determined by the jury." *Edwards*, 52 N.C. App. 688, 698, 279 S.E.2d 894, 900, *aff'd*, 304 N.C. 585, 284 S.E.2d 518 (1981).

Some acts, however, are so clearly outside the scope of employment that summary judgment is proper. As the Court of Appeals has noted, "[i]ntentional tortious acts are rarely considered to be within the scope of an employee's employment." *Brown*, 93 N.C. App. at 437, 378 S.E.2d at 235. This Court stated in *Robinson* that "[i]f an assault is committed by the servant, not as a means or for the purpose of performing the work he was employed to do, but in a spirit of vindictiveness or to gratify his personal animosity or to carry out an independent purpose of his own, then the master is not liable." *Robinson*, 214 N.C. at 183, 198 S.E. at 650. When a busboy offered to cut out plaintiff customer's eyes and subsequently attacked the customer, who had requested that the busboy clear his table, this Court held that the busboy "did not strike the plaintiff as a means or method of performing his duties as a busboy." Rather, "the assault . . . was not for the purpose of doing anything related to the duties of [the employee], but was for some undisclosed, personal motive. It cannot, therefore, be deemed an act of his employer." *Wegner v. Delicatessen*, 270 N.C. 62, 68, 153 S.E.2d 804, 809 (1967).

Clearly, the matters alleged and shown by the forecast of evidence here fall in the category of intentional tortious acts designed to carry out an independent purpose of defendant Bass' own, and they thus were not within the course and scope of his employment with defendant FCB or in furtherance of any FCB purpose. While Bass was exercising authority conferred upon him by defendant FCB when he summoned the minor plaintiff to his office to discuss her truancy problem, in proceeding to assault her sexually he was advancing a completely personal objective. The assault could advance no conceivable purpose of defendant FCB; defendant Bass acted for personal reasons only, and his acts thus were beyond the course and scope of his employment as a matter of law. There thus was no genuine issue of material fact regarding defendant FCB's derivative liability under a respondeat superior theory, and summary judgment for defendant FCB was proper.

## MEDLIN v. BASS

[327 N.C. 587 (1990)]

Plaintiff's reliance on *Munick v. Durham*, 181 N.C. 188, 106 S.E. 665 (1921), is misplaced. In *Munick*, an employee of defendant city assaulted the plaintiff when plaintiff, a Jewish immigrant from Russia, paid a portion of his water bill in pennies. The Court noted that the employee "was acting in his capacity as agent" at the time of the assault. *Munick*, 181 N.C. at 193, 106 S.E. at 667. The same cannot be said of defendant Bass here. In *Munick*, the employee, charged with general supervision of the water system, was overseeing the collection of money for services rendered at the time he attacked the plaintiff. Bass' duties as principal included counseling a chronically truant student, but sexually assaulting the student was unrelated to counseling or any other function explicitly or implicitly authorized by defendant FCB and could not conceivably further any FCB purpose. Although *Wegner v. Delicatessen*, 270 N.C. 62, 153 S.E.2d 804, discussed above, cites *Munick*, it is significant that the holding in *Wegner* implicitly rejected the "while on duty" language of *Cook v. R.R.*, 128 N.C. 333, 38 S.E. 925 (1901), on which *Munick* relied. *See Munick*, 181 N.C. at 193, 106 S.E. at 667. In *Cook*, the Court had suggested that "in the scope of employment" was the same as "while on duty." *See id.* Yet, in *Wegner*, although the busboy was on duty at the time he assaulted the customer, the assault was held not to be in the scope of employment as a matter of law. The holding in *Wegner* represents a shift from a "while on duty" test to a less static "within the scope of employment and in furtherance of the employer's business" test stated in the later cases discussed above. Just as the busboy in *Wegner* stepped out of the course and scope of his employment when he assaulted the customer, defendant Bass here stepped out of the course and scope of his employment when he sexually assaulted the minor plaintiff.

For the foregoing reasons, the decision of the Court of Appeals is

Affirmed.

Justice MARTIN dissenting in part.

I respectfully dissent from the majority opinion on the issue of respondeat superior. The question of whether the defendant, Franklin County Board of Education, is liable for the actions of its employee, Vann Bass, is properly for the jury to decide. There is a material question of fact as to whether Bass was acting within

the scope of his employment. Therefore, summary judgment was improvidently allowed.

At the outset, it is to be noted that paragraph 38 of plaintiff's complaint alleges that Bass was acting within the course and scope of his employment with the defendant Board of Education. The defendant Board of Education merely denies the allegations of paragraph 38.

Bass in his affidavit simply denies that he assaulted Pamela. Nowhere in the record is there any evidence that Bass was not acting in the course and scope of his employment with the Board at the time in question.

To the contrary, viewing the evidence in the light most favorable to the non-movant, plaintiff has made a forecast showing:

(1) Pamela was a nine-year-old elementary school student.

(2) She had not been attending school regularly and had a truancy problem.

(3) Bass was the principal of the school attended by Pamela and was charged by the defendant Board of Education with the duty of counselling and disciplining students because of truancy.

(4) At the time in question, Bass ordered Pamela to come into his office. Upon arriving in Bass's office, Pamela sat in a chair on the opposite side from where Bass sat at his desk. Once inside the office, Pamela was completely within the power of Bass.

(5) During his counselling and disciplining of Pamela, Bass committed a sexual assault upon her.

In *Munick v. Durham*, 181 N.C. 188, 106 S.E. 665 (1921), this Court held that a city employee was acting within the scope of his employment when he committed an unprovoked assault upon a customer who was paying his water bill. Although the employee had no instructions to commit acts of violence, he was nevertheless acting as an agent for the city. "Acting within the scope of employment means while on duty." *Id.* at 193, 106 S.E. at 667 (quoting *Cook v. R.R.*, 128 N.C. 333, 38 S.E. 925 (1901)). Although the "while on duty" rule has since been abandoned, "the employer is not absolved from liability by reason of the fact that the employee was also motivated by malice or ill will toward the person injured, or even by the fact that the employer had expressly forbidden

**MEDLIN v. BASS**

[327 N.C. 587 (1990)]

him to commit such act." *Wegner v. Delicatessen*, 270 N.C. 62, 66, 153 S.E.2d 804, 808 (1967) (citations omitted). In *Wegner* the Court noted that the employee who assaulted a customer had no managerial responsibilities in his position as busboy. His job of clearing tables had nothing to do with his striking the plaintiff, although the original quarrel apparently arose while the employee was performing his duties. Had he assaulted the plaintiff while clearing the table, he would have been within the scope of his employment. *Id.* at 68, 153 S.E.2d at 809. Here the assault occurred while Bass was counselling and disciplining the child.

I do not agree with the majority's conclusion that the alleged sexual assault was beyond the course and scope of Bass's employment as a matter of law. Additional evidence gleaned from the materials before the court showed that Bass knew about Pamela's truancy problem and in the fall of 1984 had met with her mother to discuss the matter. Taken in the light most favorable to the plaintiff for summary judgment purposes, the evidence shows that Bass called the plaintiff to his office for disciplinary purposes. Discipline of students is clearly within the scope of a principal's employment. N.C.G.S. § 115C-288(c) (1987) ("The principal shall use reasonable force to discipline students"). There is a material question of fact as to whether Bass was acting within the course and scope of his employment. That the assault was sexual in nature should not preclude the case from going before a jury. Courts in other jurisdictions have not found sexual assaults to be necessarily outside the scope of employment. *See, e.g., Marston v. Minneapolis Clinic of Psychiatry*, 329 N.W.2d 306 (Minn. 1983) (whether sexual assaults committed by psychologist on a patient were within the scope of employment by medical center was a question of fact).

When the principal of a school, acting in that capacity and exercising the authority of that position, orders a nine-year-old girl into the confines of his office, she is completely subject to his control. The school board cannot escape liability by arguing that the assault was beyond the scope of the employment. This Court has long recognized that where an employee has committed a wrongful act, the loss should be borne by the employer, not the innocent victim:

The principal may be perfectly innocent of any actual wrong or of any complicity therein, but this will not excuse him, for the party who was injured by the wrongful act is also

innocent; and the doctrine is that where one of two or more innocent parties must suffer loss by the wrongful act of another, it is more reasonable and just that he should suffer it who has placed the real wrong-doer in a position which enabled him to commit the wrongful act, rather than the one who had nothing whatever to do with setting in motion the cause of such act.

*Ange v. Woodmen*, 173 N.C. 33, 35-36, 91 S.E. 586, 587 (1917) (quoting Reinhardt on Agency § 335). Sexual assaults are not only acts of personal gratification, but also acts of violence.

Here, the defendant Board of Education placed its employee, Bass, in the physical and authoritarian position that enabled him to commit the assault on Pamela. Under such circumstances the Board is liable for the torts of its agent. *See* Restatement (Second) Agency § 219(2)(d) (1957).

Moreover, the public policy of North Carolina demands that plaintiff should have at least an opportunity to present her case against the Board of Education to the jury. Our state has a compelling interest in protecting its school children from sexual assaults. This requires that such children have a meaningful remedy.

At the very least it is unclear what happened in Bass's office; he denies any assault occurred. Plaintiff's forecast of the evidence shows that she was ordered into Bass's office for counselling and discipline because of her truancy, and that she was sexually assaulted arising out of this encounter. This Court adopted the reasoning of our Court of Appeals in *Edwards v. Akion*, 52 N.C. App. 688, 279 S.E.2d 894, *aff'd*, 304 N.C. 585, 284 S.E.2d 518 (1981), which held:

When there is a dispute as to what the employee was actually doing at the time the tort was committed, all doubt must be resolved in favor of liability and the facts must be determined by the jury. The doctrine should be applied liberally, especially where the business involves a duty to the public, and the courts should be slow to assume a deviation from the duties of employment.

*Id.* at 698, 279 S.E.2d at 900 (citations omitted). *Akion* involved an assault by a sanitation worker arising out of a dispute as to the collection of garbage.

With the increased prevalence of sexual assaults on children in our society, the courts should be the last to deny relief to the innocent.

Justice FRYE joins in this dissenting opinion.