**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 25-1526**

SHANNON MULLEN,

        Plaintiff – Appellant,

v.

TOWN OF SUNSET BEACH, NORTH CAROLINA,

        Defendant – Appellee,

and

ISAAC KRAMMES, in his individual capacity,

        Defendant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  Louise W. Flanagan, District Judge.  (7:23-cv-00117-FL-KS)

Argued:  January 28, 2026                        Decided:  May 7, 2026

Before NIEMEYER and WYNN, Circuit Judges, and KEENAN, Senior Circuit Judge.

Affirmed by published opinion.  Judge Keenan wrote the opinion, in which Judge Niemeyer and Judge Wynn concur.

**ARGUED:** Raymond Curtis Tarlton, TARLTON LAW PLLC, Durham, North Carolina, for Appellant. Norwood Pitt Blanchard, III, CROSSLEY MCINTOSH COLLIER HANLEY & EDES PLLC, Wilmington, North Carolina, for Appellee. **ON BRIEF:** Catherine E. Edwards, EDWARDS BEIGHTOL, LLC, Raleigh, North Carolina, for Appellant. G. Grady Richardson, Jr., Susan Groves Renton, LAW OFFICES OF G. GRADY RICHARDSON, JR., P.C., Wilmington, North Carolina, for Appellee.

BARBARA MILANO KEENAN, Senior Circuit Judge:

Shannon Mullen filed this action against the Town of Sunset Beach, North Carolina (Sunset Beach), asserting claims of municipal liability under 42 U.S.C. § 1983 for violations of her Fourth and Fourteenth Amendment rights based on allegations of sexual assault committed by a Sunset Beach police officer. The district court awarded summary judgment to Sunset Beach concluding that, as a matter of law, Mullen's injuries did not result from the Sunset Beach police department's failure to adopt policies prohibiting the officer's conduct or from the department's failure to train and supervise its officers. The district court also awarded summary judgment to Sunset Beach on Mullen's claims for negligent hiring, supervision, and retention under North Carolina law.

Based on our review, we agree with the district court's judgment. After construing the evidence in Mullen's favor, we hold that the district court correctly concluded that Mullen failed to show that Sunset Beach was deliberately indifferent to her constitutional rights and, so, failed to establish a claim for municipal liability under Section 1983. On the record before us, no jury could reasonably conclude that Sunset Beach knew that there was a substantial risk that one of its officers would commit a sexual assault. Therefore, any omission in the department's policies or its training and supervision could not have caused Mullen's asserted injuries. Additionally, we agree with the district court that Mullen's state law claims fail for lack of supporting evidence. Accordingly, we affirm the court's award of summary judgment to Sunset Beach.

3

I.

Kenneth Klamar (Chief Klamar) began serving as Chief of Police for the Sunset Beach police department (the department) in 2017. In 2019, Isaac Krammes applied for a position as an officer with the department after completing the "North Carolina Basic Law Enforcement Training" (BLET) program.

Sunset Beach's police department conducted a pre-employment investigation of Krammes. As part of this investigation, personnel contacted Krammes' former employers and military supervisors. The only negative response in the record included one prior employer's statement that Krammes' "temperament needs to be closely monitored." J.A. 773. When asked to clarify this remark, the employer did not provide any specific information.

Police department personnel also conducted a "social media check" and required Krammes to submit to medical and drug screenings and a psychological examination. The psychological exam, which included both an interview and personality testing, identified Krammes as "suitable" for employment, but noted that he had a "high risk" for "integrity problems" and had been unfaithful to his first wife.

Krammes also was subjected to a "computerized voice stress analysis" (CVSA) examination. The CVSA report indicated "no deception," and the examiner noted that Krammes was a "good hire." J.A. 752. However, the report also noted: (1) Krammes initially had failed a few sections of the BLET final exam; (2) another law enforcement

4

jurisdiction had declined to hire Krammes after a polygraph examination;[1] and (3) Krammes' ex-wife had filed a domestic violence complaint against him in 2017, which complaint was later dismissed. After Krammes obtained a final certification from the state training standards commission, Chief Klamar hired Krammes as a patrol officer beginning in October 2019.

Krammes first encountered plaintiff Shannon Mullen in early 2020, when he executed a traffic stop on the car Mullen was driving. During that stop, Krammes learned Mullen was driving without a valid license. Mullen alleged that after the stop, between March and June 2020, Krammes visited and entered her home about four times while on duty. Mullen reported that during these visits, Krammes exposed himself and pressured her to engage in sex acts. According to Mullen, she had sexual intercourse with Krammes at least once in exchange for leniency regarding her driving violations.

In October 2020, department officers executed a drug-related search at Mullen's residence. During the search, Assistant Chief Joe Smith observed that Mullen was visibly upset by Krammes' presence. Mullen stated to Krammes, "Oh, I got stuff on you." J.A. 350. Krammes later asked Assistant Chief Smith whether Mullen had told him anything. When Smith said that she had, Krammes responded that "none of it was true." J.A. 351.

---

[1] The polygraph examination report is not in the record, nor is there any record evidence that Krammes had "failed" the examination.

Less than two months later, in December 2020, Krammes resigned from his position with the department.

During Krammes' employment, the department did not receive any complaints or allegations against him. However, his employment record showed that Krammes was disciplined for speeding, for failing to complete reports, and for making inappropriate jokes and slurs, including harassing a female employee about her weight. More than a year after Krammes' resignation, in February 2022, Mullen first reported to department officials that she and Krammes had engaged in sex acts in 2020 while Krammes was on duty, and that such conduct was coerced and not consensual. After receiving this report, Chief Klamar and another officer investigated the matter and interviewed Mullen about her allegations.

Mullen later filed the present complaint against Sunset Beach, alleging two claims under 42 U.S.C. § 1983, for violations of her Fourth and Fourteenth Amendment rights arising from Krammes' conduct.[2] In particular, Mullen alleged that Sunset Beach was subject to municipal liability for (1) unconstitutional policies and customs, and (2) failure to train and supervise its officers. Mullen also asserted state law claims against Sunset Beach for negligent hiring, supervision, and retention.

The parties proceeded to engage in discovery. In Krammes' deposition, he acknowledged that "it's against policy" to engage in sexual activity while on duty, and he

---

[2] In her complaint, Mullen also alleged claims against Krammes individually, but the parties entered into a settlement agreement and the district court dismissed the case against Krammes.

admitted to violating this policy.  Krammes additionally stated that he had not received any training on sexual misconduct while employed with the department.

The parties agree that the department did not have a particular written policy regarding sexual misconduct.  Nevertheless, the department had a general rule requiring officers to be attentive and alert while on duty and to not act in a manner that "brings the department into disrepute or reflects discredit upon the employee."  J.A. 666.

According to evidence in the record, Chief Klamar was aware that three other Sunset Beach police officers had engaged in inappropriate sexual conduct while on duty in 2017 before Officer Krammes began working for the department in 2019.  The first officer admitted to having consensual sexual relations with his wife while he was on duty.  Chief Klamar recommended that the officer be terminated based on this conduct, but the officer later was permitted to resign.

A second officer resigned his position after department officials learned that he had engaged in a consensual sexual encounter while on duty.  There are no other details in the record about this incident.

Finally, a third officer engaged in sexual relations with a citizen while the officer was on duty.  The officer had been talking with a woman alongside her car and, after she drove away, later stopped her for failing to use her car's headlights.  After the traffic stop, the officer sent the woman a text message asking to meet her in a remote area.  She complied, and she later reported to Chief Klamar that she had engaged in consensual sexual

relations with the officer. Although Chief Klamar recommended that the officer be terminated, the officer was permitted to resign.[3]

After completing discovery, Sunset Beach moved for summary judgment, which motion the district court granted. On appeal, Mullen asserts that the district court erred in awarding judgment to Sunset Beach on her claims of municipal liability under 42 U.S.C. § 1983, and on her North Carolina state law claims of negligent hiring, supervision, and retention. We address these issues in turn.

## II.

A party is entitled to summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing an award of summary judgment, we apply a de novo standard and construe "all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 958 (4th Cir. 2022) (citation omitted).

### A.

---

[3] There was a fourth officer who was terminated from the department in 2013 for reasons other than sexual misconduct. Because he was later accused of sexual assault for conduct that occurred after his employment had ended, this incident is not relevant to the present case.

We first address Mullen's argument that the district court erred in granting summary judgment to Sunset Beach on her claims of municipal liability under 42 U.S.C. § 1983. Mullen contends that Sunset Beach is liable for injuries she sustained as a result of Krammes' sexual assault. She asserts that despite the department's awareness of prior incidents of sexual misconduct by officers while on duty, Sunset Beach (1) failed to adopt any policies prohibiting sexual misconduct by an officer on duty, and (2) failed to adequately train and supervise its officers to prevent such misconduct. According to Mullen, Chief Klamar must have been aware of a pattern of sexual misconduct by officers and nonetheless failed to take action to prevent such misconduct, including Krammes' assault of Mullen.

Mullen further contends that Chief Klamar should have been aware of the ongoing nature of Krammes' misconduct toward Mullen. She maintains that because Officer Krammes frequently parked his patrol car near Mullen's residence, which was located near the police station, Krammes' misconduct was sufficiently "open and flagrant" to place Chief Klamar on notice that Mullen's constitutional rights were likely to be violated. So, Mullen maintains that a jury reasonably could conclude that Sunset Beach had notice of Krammes' and other officers' misconduct, did "nothing" to address the problem, and that its failure to revise its policies or to implement adequate training or supervision caused Mullen's injuries. We disagree with Mullen's arguments.

9

Municipal liability under 42 U.S.C. § 1983 is limited. As explained below, a municipality is responsible under Section 1983 only for constitutional violations caused by its own policies or practices, not for the isolated misconduct of individual employees.

Section 1983 provides that any "person" who under color of state law causes the deprivation of another's federal constitutional rights is liable to the injured party. 42 U.S.C. § 1983. In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 (1978), the Supreme Court held that municipalities qualify as "persons" under Section 1983. But municipalities may only be held liable for their own unlawful acts; they are not vicariously liable for constitutional violations caused by their employees. *Owens v. Balt. City State's Attys. Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (citing *Monell*, 436 U.S. at 691 and *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). A plaintiff must demonstrate a "direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). Thus, municipal liability arises only when the alleged constitutional injury results from an official policy, custom, or practice attributable to the municipality itself. *Id.* at 403-04.

Relevant here, municipal liability may arise through an "omission," such as the failure to adopt policies preventing unconstitutional conduct, or the failure to adequately train or supervise employees regarding the impropriety of such conduct. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). To succeed on such a claim, a plaintiff must show that the omission "manifests deliberate indifference" on the part of the municipality "to the rights of citizens." *Id.*

Deliberate indifference is a demanding standard. *Owens*, 767 F.3d at 402; *see also Est. of Jones v. City of Martinsburg*, 961 F.3d 661, 672 (4th Cir. 2020). It requires proof that municipal policymakers (1) knew or should have known that their failure to act was likely to result in constitutional injury, and (2) disregarded that risk. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *see City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). Isolated instances of unconstitutional conduct by municipal employees are insufficient to establish municipal liability. *See Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984); *see Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam) (rejecting municipal liability based on "isolated incidents"). Instead, a plaintiff generally must demonstrate a pattern of "persistent and widespread" similar constitutional violations sufficient to place policymakers on notice that their failure to adopt appropriate policies or training would likely result in constitutional injury. *Owens*, 767 F.3d at 402-03 (citing *Spell v. McDaniel*, 824 F.2d 1380, 1386-91 (4th Cir. 1987)). However, a plaintiff also can show that training was inadequate when a situation occurred "with sufficient frequency," *Lytle*, 326 F.3d at 474, and the deficient training made "the specific violation almost bound to happen, sooner or later," *Spell*, 824 F.2d at 1390 (quotation omitted); *see also Canton*, 489 U.S. at 390 n.10 (positing that in certain situations, the need for training can be "so obvious" and its absence "so likely" to produce a constitutional violation that a failure to train amounts to deliberate indifference).

11

The district court held, and we agree, that no facts in the record show that Chief Klamar or any other individual with policymaking authority knew of a substantial risk that sexual assaults likely would be committed by Sunset Beach officers while on duty. The only prior incidents identified by Mullen involved officers engaged in consensual sexual relations while on duty.[4] Although this conduct violated the department's rule requiring officers to be attentive while on duty and plainly was not appropriate, as evidenced by Chief Klamar's recommendation that these officers be fired, the prior incidents do not resemble the allegations of sexual assault and coercion in this case. Because those prior incidents did not involve coercion or abuse of authority to compel sexual activity, they did not place department policymakers on notice of a repeated problem of sexual assault that would require a response by those policymakers. Without evidence of a pattern of prior similar constitutional violations, Sunset Beach lacked the notice necessary to establish its deliberate indifference to the protection of citizens' constitutional rights. *See Connick*, 563 U.S. at 62.

---

[4] Mullen urges us to conclude that one officer necessarily engaged in coercive sexual conduct because he encountered the woman in a traffic stop while he was on duty and, thus, was in a "position of power" over her. However, even if we assume, without deciding, that Mullen is correct on this point, this one incident of coercive conduct was insufficient to place policymakers on notice of a pattern of constitutionally violative conduct that needed to be addressed, nor would it make the need for sexual misconduct training so obvious that a failure to train demonstrates deliberate indifference. *See Connick*, 563 U.S. at 61-64.

12

We also observe that nothing in the record suggests that Chief Klamar knew or should have known about Krammes' misconduct toward Mullen and could have acted to prevent it. Mullen stated that Krammes visited her home about four times between March and June 2020. Although Krammes' patrol car may have been parked near Mullen's home, Chief Klamar explained that officers routinely parked in the area near Mullen's home to monitor traffic. Further, there was no evidence to suggest that Krammes was engaged in anything other than police work on those occasions. Both Mullen and Krammes stated in their deposition testimony that no one in the department knew about Krammes' sexual assault and harassment of Mullen.

The record shows that the first time that department officials could have been aware of Krammes' unlawful conduct toward Mullen arose several months after that conduct had ended, during the search of Mullen's home in October 2020. Krammes resigned two months later. Accordingly, no facts demonstrate that Chief Klamar or other department policymakers knew or should have known about Krammes' unlawful conduct, failed in their supervision of Krammes, or could have acted to prevent his actions. And because Sunset Beach lacked notice that any other officer was committing similar sexual assaults, no reasonable jury could conclude that the department's policies or its training and supervision reflected a deliberate indifference to Mullen's constitutional rights. Therefore, the district court did not err in granting summary judgment to Sunset Beach on Mullen's municipal liability claim.

B.

13

Mullen next contends that the district court erred in granting summary judgment in favor of Sunset Beach on her claims of negligent hiring, supervision, and retention under North Carolina law. Focusing mainly on her negligent hiring claim, Mullen asserts that she presented evidence that Sunset Beach failed to review or recognize severe "red flags" appearing in Officer Krammes' background check, including concerns such as his poor performance on a prior polygraph examination and an allegation of domestic violence. Based on this evidence, Mullen argues that a jury reasonably could conclude that Sunset Beach was negligent in hiring Krammes. We disagree with Mullen's contentions.

Initially, we observe that although Mullen focuses her state law claims on her allegation of negligent hiring, she also alleges claims of negligent supervision and retention. As explained above, however, there were no indications about Krammes' or other officers' conduct that should have caused Chief Klamar or other department officials to take additional supervisory actions regarding the prevention of sexual assault committed by officers while on duty. And because Krammes resigned soon after department officials first had evidence indicating that he may have engaged in misconduct toward Mullen, a jury could not reasonably conclude that Sunset Beach negligently retained Krammes as an officer. We therefore turn to consider Mullen's claim of negligent hiring.

To establish a claim of negligent hiring under North Carolina law, a plaintiff must show that the employee was incompetent or unfit for the position, that the employer knew or should have known of that incompetence or unfitness through the exercise of reasonable

14

care, and that the employee's incompetence or unfitness caused the plaintiff's injury. *Medlin v. Bass*, 398 S.E.2d 460, 462 (N.C. 1990); *see also Keith v. Health-Pro Home Care Servs., Inc.*, 873 S.E.2d 567, 576 (N.C. 2022). Critically, the employer must be on notice of prior conduct or characteristics suggesting a propensity for the same or similar misconduct that injured the plaintiff. *See Medlin*, 398 S.E.2d at 462-63. Without such notice, the employer cannot be held liable for negligence in hiring that employee. *Id.* So, generalized concerns about an employee's character or performance typically are insufficient to establish liability.

As the district court concluded, nothing in Krammes' application or background suggested that he had a prior history of sexual assault before Sunset Beach hired him. At most, Krammes' application materials suggested a general concern about his "temperament," his past infidelity toward his spouse, and a past allegation of domestic abuse.[5] With regard to Krammes' poor performance on a prior polygraph examination, the record does not include any further information about that exam. Thus, the evidence is insufficient to show Krammes' propensity to commit sexual assault. *See id.* at 463 (explaining that the record lacked evidence that defendants knew or could have known of the principal's alleged pedophilic tendencies). Accordingly, the district court correctly

---

[5] We observe that Chief Klamar expressed concern about this domestic abuse charge. However, upon inquiry, he learned that because the charge was dismissed, it did not impact Krammes' certification under the state training standards.

15

determined that department officials could not be held liable for negligent hiring under North Carolina law.

III.

For these reasons, we affirm the district court's award of summary judgment in favor of Sunset Beach on Mullen's claims of municipal liability under 42 U.S.C. § 1983, and of negligent hiring, supervision, and retention under North Carolina law.[6]

*AFFIRMED*

---

[6] Because Mullen failed to establish any negligent conduct on the part of Sunset Beach, her additional claim for negligent infliction of emotional distress under North Carolina law necessarily also fails. *Glenn v. Johnson*, 787 S.E.2d 65, 70-72 (N.C. App. 2016) (setting out elements for such a claim and requiring negligent conduct). So, we affirm the district court's award of summary judgment to Sunset Beach on this claim as well.